**Thomas J. RUPERT, Appellant–Respondent,**

v.

**Peggy M. RUPERT, Appellee–Petitioner.**

**No. 17A05–9204–CV–110.**

Court of Appeals of Indiana, Fifth District.

Nov. 17, 1992.

Transfer Denied Feb. 1, 1993.

Kevin L. Likes, Auburn, for appellant-respondent.

Linley E. Pearson, Atty. Gen., Daniel E. Morris, Deputy Atty. Gen., Indianapolis, for appellee-petitioner.

BARTEAU, Judge.

Thomas and Peggy Rupert divorced in April of 1984. At that time Peggy received custody of their three children and Thomas was ordered to pay child support at a rate of $125.00 per week. Thomas later petitioned to modify the child support order due to his unemployment. Following a hearing, the trial court reduced Thomas's child support to $60.00 per week, but also ordered that the support would automatically return to $125.00 per week when Thomas became employed. The May 14, 1987 order contained the following language:

1. That there is a substantial change of circumstances of the parties in that the respondent is unemployed and drawing $88 per week unemployment benefits from the State of Ohio.

\*   \*   \*   \*   \*   \*

5. That an order of $125 per week is appropriate based upon the present circumstances of the parties when the Respondent is employed.

\*   \*   \*   \*   \*   \*

8. That the support is ordered modified to $60 per week effective March 24, 1987, the date on which the Respondent filed a Petition For Modification of Support.

9. That $60.00 per week shall continue until 10 days after the Respondent becomes employed.

\*     \*     \*     \*     \*     \*

12. That the Respondent is ordered to notify the Court and Petitioner within 10 days of his becoming employed and without further order of the Court is ordered to commence paying current support of $125.00 plus $10.00 per week on the arrearage order until the arrearage is brought current.

Thomas never secured full time employment but faithfully paid the $60.00 per week ordered by the trial court. In November of 1990 Peggy filed a petition for contempt alleging that Thomas became employed by a contractor in July of 1989 and had accumulated a $4,635.00 support arrearage. At the contempt hearing, Thomas testified that he received twenty six weeks of unemployment compensation, ending in September of 1987. He further testified that he had no full-time employment since May 14, 1987, but beginning in the summer of 1987, he became self-employed as a carpenter/painter. His earnings in 1987 were $1,453.00, $4,043.00 in 1988 and $7,000.00 in 1989.

The judge hearing the contempt petition [1] found that the language of the May 1987 order was unclear and ambiguous, that the parties had divergent interpretations of the order and then proceeded to interpret the order as follows:

That the present presiding Judge finds from reading the May 14, 1987 Court order as a whole that it was the intent of the previous presiding Judge in fashioning the May 14, 1987 Court order that the child support order automatically revert back from $60.00 per week to $125.00 per week once Respondent Thomas J. Rupert became employed including becoming self-employed.

He then found that Thomas ceased being unemployed on July 15, 1987 and that the child support order automatically reverted to the amount of $125.00 per week as of that date. He then calculated that Thomas was in arrears in support in the amount of $14,349.00, but did not find him in contempt, ruling that the order was unclear and ambiguous and that Thomas had maintained a pattern of regular weekly child support payments consistent with his understanding of the May 14, 1987 order.

Thomas contends that this ruling amounts to an abuse of discretion. A child support order constitutes an abuse of discretion by the trial court when the order entered is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences that might be drawn therefrom. *Olson v. Olson* (1983), Ind.App., 445 N.E.2d 1386. We agree that the trial court's ruling amounts to an abuse of discretion.

Contrary to the trial court's finding, the parties's interpretation of the order was not divergent. Thomas paid $60.00 per week even though he did earn a small amount of money as a self-employed carpenter/painter. Peggy received the $60.00 per week while Thomas was self employed and did not contend that his support should be $125.00 per week until she believed he had gone to work for a contractor.[2] Both apparently labored under the assumption that the support would not increase until Thomas secured steady employment.

The 1987 order, while not addressing the

---

1. The judge who issued the 1987 order is deceased.

2. Peggy filed her contempt petition in November of 1990 alleging that Thomas had been employed by a contractor since July of 1989 and was consequently $4,635.00 in arrears. Peggy's arrearage figure closely parallels a rough estimate of the arrearage which would have accrued had the support been bumped to $125.00 in July of 1989, i.e. support at $125.00 per week from July 5, 1989—November 7, 1990 (70 weeks) totals $8,750 and support at $60.00 per week for the same period totals 4,200.00, a difference of $4,550.00.

"self-employed"[3] question directly, nevertheless supports the interpretation given it by Thomas and Peggy. Contained in the order is a finding that Thomas was "able to make the $125.00 per week when employed at various different places of employment earning different incomes including a commission basis, income for straight sales, a salary plus commission and other benefits." Implicit in this finding is that Thomas is capable of making $125.00 per week support payments when he has steady employment. Implicit in the rest of the order is the court's determination that Thomas is incapable of making $125.00 per week support payments when he is unemployed and bringing in only $88.00 per week. Thus, if the trial court ordered a reduction in support when Thomas was receiving $88.00 per week, in would be incongruous to institute the $125.00 per week just because Thomas classified himself as "self-employed", when in actuality he was earning less money than the $88.00 per week he received as unemployment compensation. The language in the order, rather than indicating that *any* income would trigger the increase in support, suggests implementation of the increase only upon Thomas securing some sort of conventional employment, where he at least received a wage on a regular basis.

Peggy's reliance on *In re Marriage of Wilson* (1986), Ind.App., 501 N.E.2d 498, does not convince us to the contrary. *Wilson* dealt with a similar support reduction subject to automatic increase but is distinguishable in that husband was not unemployed but merely laid off and began paying a higher support as soon as he was called back to his old job. This court held that reasonable notice of modification of a support order should be determined on a case by case basis and that the evidence supported the court's determination that the order provided husband with reasonable notice that re-employment at his former job would trigger the increase in support. In the case before us, we deem the notice provided in the order insufficient to alert Thomas that the support award would revert to $125.00 per week should he earn even a minimal amount of money by any means other than through unemployment compensation.

Because we deem the notice provided in the order insufficient, the trial court's determination that Thomas was $14,349.00 in arrears amounts to an impermissible retroactive modification of child support. *Pickett v. Pickett* (1984), Ind.App., 470 N.E.2d 751. Thus, we reverse and remand to the trial court for a determination as to whether there is an arrearage under the $60.00 per week order.

SHARPNACK, C.J., and RATLIFF, Senior Judge, concur.

---

**3.** We note that often the distinction between "self-employed" and "unemployed" is a very fine line.